UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRISCILLA RITORTO,

      Plaintiff,

v.                          CASE NO. 8:19-cv-2668-T-TGW

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.

_____

O R D E R

      The plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[1]   Because the decision of the Commissioner of Social Security is supported by substantial evidence, and the plaintiff does not identify reversible error, the decision will be affirmed.

I.

      The plaintiff, who was fifty-eight years old on the date that she was last insured for Social Security benefits, and who has a high school diploma, has worked as a receptionist (Tr. 34, 149, 297).   The plaintiff alleges that she became disabled on May 9, 2015, due to cervical stenosis,

_____

[1]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

migraines, torn thumb, diabetes, high blood pressure, depression, anxiety, thyroid problem and a torn shoulder (Tr. 149).[2] The plaintiff's claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that, through the date last insured of March 31, 2017, the plaintiff had severe impairments of "cervical spine disorders, carpal tunnel syndrome (CTS), left hand osteoarthritis (OA), and left shoulder joint disorders with partial thickness tear, and migraines" (Tr. 25). The law judge found that the plaintiff also had several other medically determinable impairments, including anxiety disorders, but that they were nonsevere (Tr. 25–26).

The law judge determined that in light of the severe impairments the plaintiff, through the last date insured, had the following residual functional capacity (Tr. 27):

> [She could] perform sedentary work as defined in
> 20 CFR 404.1567(a), except the claimant is unable
> to climb ladders/ropes/scaffolds, to be exposed to
> vibration, to crawl, or to reach overhead with her
> left upper extremity; and is occasionally able to
> push/pull with her bilateral upper extremity, reach
> overhead with her right upper extremity, be
> exposed to extreme cold, humidity, or workplace

---

[2] This is an amended onset date. The original alleged onset date was April 1, 2014 (Tr. 150).

hazards (such as unprotected heights and moving machinery), climb ramps/stairs, stoop, balance kneel, or crouch. The undersigned also determines the claimant should have no exposure to more than a moderate noise intensity level as moderate is defined in the SCO; that the claimant must be indoors to avoid direct exposure to sunlight; and that the claimant is frequently able to reach in all other directions bilaterally, and handle and finger with her left hand.

The law judge concluded, based on the testimony of a vocational expert, that the plaintiff's residual functional capacity did not preclude her from performing her past relevant work as a receptionist (Tr. 34). Consequently, the law judge found that the plaintiff was not disabled from her alleged onset date of May 9, 2015, through March 31, 2017, her date last insured (id.). That determination became the final decision of the Commissioner of Social Security.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, the plaintiff must show that she became disabled before her insured status expired on March 31, 2017. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. The Act provides further that a claimant will be found not disabled if she can perform her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

4

witnesses.  Grant v. Richardson, 445 F.2d 656 (5ᵗʰ Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5ᵗʰ Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11ᵗʰ Cir. 1988).

III.

The pertinent time period for this disability claim is May 9, 2015, the date the plaintiff was injured in an automobile accident, through March 31, 2017, the date she was last insured for disability benefits.  The plaintiff failed to show that the law judge erred in finding her not disabled during this period.

The plaintiff argues first that the law judge "did not offer good cause for giving little weight to the opinions of ... [two] treating physicians,"

orthopedist Dr. Kevin Scott and psychiatrist Dr. Bharminder Bedi (Doc. 17, p. 14), both of whom essentially opined that the plaintiff was disabled from working.

A. Dr. Scott expressed his opinion of the plaintiff's limitations in a Residual Functional Capacity Questionnaire form dated January 9, 2018 (Tr. 1350–53). Dr. Scott opined that the plaintiff could sit only two hours, and stand/walk up to two hours, during an eight-hour workday; sit and stand/walk for 15 minutes at a time; and use her hands and arms only five percent of the workday (id.). He stated that those limitations were present since March 1, 2016 (Tr. 1353). Dr. Scott attributed these limitations to a list of medical diagnostic codes, which represent pain in the left shoulder, wrist and hand; carpal tunnel syndrome in the left hand; pain and osteoarthritis of the right knee and neck pain (Tr. 1350).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Hargress v. Social Security Administration, Commissioner, 883 F.3d 1302, 1305 (11th Cir. 2018). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Id. "Where an ALJ articulates specific

reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." Poellnitz v. Astrue, 349 Fed. Appx. 500, 502 (11th Cir. 2009).

Initially, it is noted that Dr. Scott does not provide a meaningful explanation for his opinion of extreme limitations which is, in itself, a recognized basis for discounting a treating physician's opinions. See Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987). Dr. Scott merely lists general, vague symptoms of "pain, weakness, numbness, [and] tenderness" (Tr. 1350), which can vary greatly in degree and are not necessarily disabling. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)) (A mere showing of "a deviation from purely medical standards of bodily perfection or normality" is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.); see also Longworth v. Commissioner of the Social Security Administration, 402 F.3d 591, 596 (6th Cir. 2005) (The physician needs to translate how abnormal clinical findings affect functioning.). A meaningful explanation is especially important here, as it is not apparent from Dr. Scott's treatment notes the objective findings supporting his opinion of extreme functional limitations.

The law judge acknowledged Dr. Scott's opinion and explained why she gave it little weight (Tr. 33):

> In January of 2018, Dr. Kevin Scott, M.D., completed a physical residual functional capacity assessment on the plaintiff. Dr. Scott noted he had been treating the claimant since March of 2016 and that the claimant's limitations have been in effect since then. Dr. Scott found the claimant was able to sit/stand/walk fifteen minutes ... [at one time], to sit/stand/walk a total of two hours, to lift up to ten pounds occasionally, to use her hands/finger[s] only 5% of the day, and to reach 5% of the day. Dr. Scott also indicated the claimant needed an assistive device for walking (during severe pain), and that the claimant did not need to change positions (Exhibit 38F, page 4). The undersigned gives little weight to Dr. Scott's opinions, since they are internally inconsistent, when measured against the medical evidence as a whole. Treatment notes contained in Exhibit 32F do not support Dr. Scott's contentions at all. Nonetheless, the undersigned finds the claimant is limited to doing sedentary work, secondary to the impact of the claimant's severe impairments.

The law judge's explanation states good cause for discounting Dr. Scott's opinion. See Forrester v. Commissioner of Social Security, 455 Fed. Appx. 899, 902 (11th Cir. 2012). Furthermore, that determination is supported by substantial evidence, as the law judge identifies throughout the decision medical and other evidence that is inconsistent with the degree of functional limitations opined by Dr. Scott.

8

The law judge emphasizes Dr. Scott's statements that the claimant was "doing very well" after rotator cuff repair and "doing very well" in physical therapy (Tr. 30).  Furthermore, the law judge's finding that Dr. Scott's "[t]reatment notes contained in Exhibit 32F do not support [his] contentions at all" (Tr. 33) is reasonable, considering the significant normal clinical findings reflected in Dr. Scott's treatment notes (see, e.g., Tr. 1274, 1275) (the plaintiff has the full range of motion of her left upper extremity, she is neurovascularly intact, there is no impingement sign); (Tr. 1303) (despite hypersensitivity over the left hand, the plaintiff is neurovascularly intact, examination of the right extremities is normal and lower left, and upper left had a full range of motion).[3]

The law judge also found that Dr. Scott's opinion of disabling functional limitations was inconsistent with "the medical evidence as a whole" (see Tr. 33).  That determination is also supported by substantial evidence, as the law judge identified numerous clinical findings from

[3]Additionally, there is no objective medical evidence supporting Dr. Scott's opinion that the plaintiff was limited to using her right hand and arm only five percent of the day (see Tr. 1351).

Moreover, Dr. Scott lists knee pain as a basis for the plaintiff's opined limitations, but Dr. Scott's treatment records state that the plaintiff hurt her knee during a fall that occurred after the expiration of the insured period (see Tr. 1271).  These deficiencies make questionable the care with which Dr. Scott completed the Questionnaire and, thus, its reliability.

multiple health providers that were normal or near normal (see Tr. 29–31).

For example, the law judge pointed out medical reports from Florida

Gastroenterology, dated October 2014 to November 2017, specified "[n]o

signs of musculoskeletal swelling/tenderness, acute distress, [or] back pain

...." and that she had normal sensations (Tr. 31). Furthermore, the law judge

noted that, from July 2015 to August 2017, primary care physician Dr.

Andrew Henry's "[l]ongitudinal records of exams of the claimant revealed

normal musculoskeletal system, normal extremity strength, [and] intact

sensations .... (id.).

Additionally, the law judge recounted that "physical exams [at

Suncoast Community Health Center, from December of 2015 to November

of 2017] consistently demonstrated a normal gait/station ... full ranges of

upper extremity motions, and intact sensations (see pages 6, 9 and 12 of

Exhibit 29F)" (Tr. 31). The law judge noted further that treatment notes

from Hill Orthopedic Center showed "shoulder and cervical spine

tenderness," but that the plaintiff maintained "good strength in all planes of

neck movements" and "intact sensations" (Tr. 29). Moreover, a physical

examination at South Florida Baptist Hospital in February 2016 contradicted

a finding of debilitating physical limitations (id.; see Tr. 1047 (no tenderness

in neck or back; normal range of motion in the back and musculoskeletal

system; no focal neurological deficits; full (5/5) motor strength and normal sensation in all extremities)).

Moreover, the law judge recounted the plaintiff's diagnostic testing results to support her rejection of Dr. Scott's opined extreme functional limitations. Thus, she noted that the plaintiff's August 2017 lumbar spine MRI scan "indicated only mild or minimal findings," and the cervical MRI scan revealed mild-to-moderate changes and no more than small C4-5/C6-7 protrusions..." (Tr. 32, 30) (emphasis added). Additionally, the law judge detailed that the plaintiff's left shoulder MRI in September of 2016, "showed a supraspinatus tendon tear [which was subsequently repaired with surgery] ... with merely mild supraspinatus muscle atrophy, mild sub-acromial sub-deltoid bursa, and mild tendinopathy" (Tr. 30). Moreover, "left wrist films showed only moderate osteoarthritic changes, with no evidence of fracture or dislocation," and her "electromyography (EMG) ... demonstrated merely mild CTS" (Tr. 31, 32) (emphasis added). Finally, an MRI scan of the plaintiff's right knee revealed no abnormalities (see Tr. 30).

This comprehensive evidence of non-disabling clinical examination findings and diagnostic test results clearly support the law judge's determination that, while the plaintiff's impairments are substantial,

they do not warrant the extreme functional limitations opined by Dr. Scott. See Belle v. Barnhart, 129 Fed. Appx. 558, 560 (11th Cir. 2005) (It is appropriate to consider normal objective findings in determining whether the plaintiff has functional work limitations.); 20 C.F.R. 404.1529(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of symptoms and the effect those symptoms ... may have on [a plaintiff's] ability to work ...."); see e.g., Lustgarten v. Commissioner of Social Security, 794 Fed. Appx. 843 (11th Cir. 2019).

The law judge also considered the plaintiff's activities of daily living, which she could reasonably find were inconsistent with Dr. Scott's opined disabling limitations. See Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 873 (11th Cir. 2011) ("We have held that an ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion.").

Thus, the law judge recounted the plaintiff's reports that she "walk[s] around the shopping center ... shop[s] in stores for groceries .... [a]ttend[s] baseball games ... read[s] books, bowl[s], play[s] tennis, [and] spend[s] time with others ...." (Tr. 28; see Tr. 308, 310, 311, 332). Notably,

the plaintiff also traveled by car to Maryland at least three times, and flew to New York, to visit family (see Tr. 141, 946, 958, 1236–38) which clearly contradicts Dr. Scott's opinion that the plaintiff could sit for only 15 minutes at a time.   Furthermore, the plaintiff testified that she did not have any numbness in, or trouble using, her right hand (Tr. 119–20), contrary to Dr. Scott's opinion that the plaintiff could use her right hand and arm only five percent of the workday (Tr. 1351).   See Magill v. Commissioner of Social Security, 147 Fed. Appx. 92, 95 (11th Cir. 2005) (physician opinion discredited because it was more restrictive than the plaintiff's testimony about her daily activities).

In sum, the law judge's explanation states good cause for discounting Dr. Scott's opinion of extreme functional limitations, and it is supported by substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) ("Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

The plaintiff argues that the law judge failed to meaningfully explain how Dr. Scott's opinion was internally inconsistent and unsupported by the record (Doc. 17, p. 16).   This argument fails because, as discussed supra, pp. 8–12, the law judge gave an ample explanation for discounting

13

Dr. Scott's opinion of debilitating functional limitations.

The plaintiff contends further that Dr. Scott's opinion is supported by degenerative changes and tenderness in her cervical spine, pain in her lumbar spine, decreased strength in her left hand, left shoulder surgery and hypersensitivity of the left hand (Doc. 17, pp. 16–17). The plaintiff's argument misapprehends the standard of review in this case, which is very deferential to the law judge. Thus, it is insufficient to identify evidence that is consistent with, or supports, disability; the evidence must compel that conclusion. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 ("findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal").

The indeterminate abnormalities identified by the plaintiff do not compel acceptance of Dr. Scott's opined disabling limitations, especially considering that the plaintiff's cervical degenerative changes were only mild to moderate, her carpal tunnel syndrome was mild, and her left shoulder surgery was successful. See Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.").

14

The plaintiff also argues that Dr. Scott's opinion is supported by the plaintiff's reports of "significant pain" (Doc. 17, p. 16). However, the law judge was not required to accept uncritically the plaintiff's allegations of pain in determining the weight to give Dr. Scott's opinion because the law judge found the plaintiff's subjective complaints were not fully credible. See Majkut v. Commissioner of Social Security, 394 Fed. Appx. 660, 664 (11th Cir. 2010) (discounting the weight given to a treating physician in part because the opinion was based on the plaintiff's subjective complaints which the law judge found were not credible).

In sum, the plaintiff's citation to some evidence that could arguably support a finding of disability is insufficient because, as discussed above, there was ample evidence supporting the law judge's finding that the plaintiff was not disabled, and the law judge's resolution of any purportedly conflicting evidence is entitled to deference. See Lawton v. Commissioner of Social Security, supra, 431 Fed. Appx. at 833. Thus, the plaintiff's disagreement with the law judge essentially is a difference of opinion as to the weight to be given to certain circumstances. The law judge, however, is given the responsibility to assess those circumstances so that the plaintiff's different opinion must yield. Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence is a function of the factfinder, not of

the district court.").

B.    The   plaintiff   also   argues   the   law   judge
did not state good cause for rejecting the opinions of her psychiatrist, Dr.
Bedi, who completed on her behalf a Mental Capacity Assessment form
regarding 20 areas of her mental functioning (Doc. 17, pp. 17–21; see Tr.
1358–62).   Dr. Bedi opined, by placing checkmarks on the form, that the
plaintiff had moderate-to-marked limitations related to understanding and
memory, sustained concentration and persistence, and social interaction and
adaptation (see Tr. 1358–62).

Notably,   Dr.   Bedi   was   directed   to   "describe   the
medical/clinical findings" supporting his assessment and base "the degree
of limitation resulting from PSYCHOLOGICAL FACTORS only" (Tr.
1358–60) (emphasis in original).   However, to the extent that Dr. Bedi's
written responses were legible, his comments were conclusory and he
improperly attributed physical abnormalities, e.g., headaches, left hand
problems, as contributing to the opined mental limitations (see Tr. 1358,
1360).   Dr. Bedi also wrote on the form to "ask-Medical MD" and "ask PCP"
about his opined limitations, which further convolutes the psychological
basis for these opinions (Tr. 1359, 1361).   See Brown v. Commissioner of
Social Security, 442 Fed. Appx. 507, 512 (11th Cir. 2011) (rejecting treating

16

physician's opinion as conclusory because he did not reference his treatment records or adequately explain his opinions).

The law judge considered Dr. Bedi's opinion and stated (Tr. 33):

> The undersigned assigns little weight to Dr. Bharminder Bedi's mental capacity assessment, wherein Dr. Bedi indicated the claimant had marked limitations in maintaining concentration, performing activities within a schedule, working with others, completing a normal workday/workweek, setting realistic goals, and travelling to unfamiliar places. Dr. Bedi also noted the claimant had moderate restrictions in getting along with peers/co-workers, accepting criticism appropriately, making simple work-related decisions, sustaining an ordinary work routine, and understanding/remembering very short simple instructions (Exhibit 40F). The undersigned accords little weight to Dr. Bedi's opinions since they are inconsistent with the medical evidence as a whole and with the opinions of DDS physicians. The undersigned notes it is unclear what the claimant's global assessment functioning is, and that the date is not clear.

The law judge states good cause for discounting Dr. Bedi's opinion that the plaintiff had moderate-to-marked mental functioning limitations. See Hargress v. Social Security Administration, Commissioner, supra, 883 F.3d at 1305.

Furthermore, that determination is supported by substantial evidence. Thus, the law judge noted that the plaintiff's "mental status exams are generally normal," and that the plaintiff reported to doctors that "she was doing well overall and that her medications were working well" (Tr. 29, 30). Furthermore, the law judge recounted treatment notes from psychiatrist Ashit Vijapura and his colleagues (who treated the plaintiff for the vast majority of this alleged disability period), specifying that the plaintiff's

> mental status exams revealed normal motor functions, normal speech, appropriate insight, organized thought processes, relevant thought content, full orientation, and a fair outlook, with no hallucinations or delusions (see pages 1-3 of Exhibit 11F; and pages 2-6, 8-12, and 16-21 of Exhibit 16F). These findings indicated the claimant was essentially able to function mentally.

(Tr. 30). See 20 C.F.R. 404.1527(c)(3) (an opinion supported by medical signs is given greater weight).

The law judge also summarized from Dr. Vijapura's treatment notes (Tr. 30):

> In March and April of 2016, the claimant reported she was doing well overall, and that her medications were working well. The claimant's condition was improving (see pages 18 and 20 of Exhibit 16F). In December of 2016, the claimant stated her medications were working well, and that her appetite was improving. The claimant denied having suicidal/homicidal thoughts or sleep

18

> problems.  The claimant was deemed stable (see
> pages 4-5 of Exhibit 16F)....

Additionally, the law judge noted that Dr. Bedi's own mental status evaluations of the plaintiff, to the extent that they were legible, "appeared to reflect motor behavior, ... thoughts, and cognitive functions that were normal ..." (see Tr. 32).

Notably, Dr. Bedi completed, two weeks before the plaintiff's disability insurance expired, a comprehensive Mental Status Examination in which he opined that the plaintiff had "Good" memory, judgment, insight, logic, abstraction and general information (Tr. 1082).[4]  Dr. Bedi added that, despite a depressed and anxious mood, the plaintiff exhibited a cooperative attitude and behavior, normal motor behavior, and appropriate and coherent content of speech and thought (Tr. 1081).

Moreover, the law judge mentioned that other health providers documented normal or near-normal mental status examinations.  For example, mental status examinations of the plaintiff by treating physician Thomas DiGeronimo "frequently indicated ... a normal mood/affect or only mild malaise/a slightly flat affect, a normal attitude, normal memory

---

[4]The mental status examination form appears to define "Good" as above average (see Tr. 1082).

19

functions, and normal insight as well as judgment" (Tr. 32). Treating physician Dr. Andrew Henry consistently recorded that the plaintiff had "intact cognitive functions" (Tr. 31). Furthermore, mental status examinations at Plant City Family Care showed that, despite a depressed mood, the plaintiff had "a pleasant affect, logical goal-directed thoughts.... [n]o signs of suicidal/homicidal ideations, mania, [or] psychomotor agitation.... (Tr. 32). The law judge summarized that (Tr. 31):

> several [other] medical reports reflected the claimant exhibited an appropriate mood/affect, alertness, intact orientation ....[and n]o signs of ... acute distress ... anxiety, or depression were detected [e.g., see pages 1-3 of Exhibit 4F; pages 5-7, 9-10, and 13-14 of Exhibit 13F; and page 3 of Exhibit 22F](Exhibits 4F, 6F, 13F, and 22F).

(see also Tr. 29, 32). In sum, the law judge could reasonably find that these normal and near-normal mental status examination findings are inconsistent with Dr. Bedi's opinions of moderate-to-marked limitations in the plaintiff's mental functioning (see Tr. 1358-60).

Additionally, the law judge concluded that the plaintiff's activities of daily living show no more than mild mental functioning limitations (Tr. 26–27). In this respect, the law judge evaluated the four broad areas of mental functioning, and found that the plaintiff engaged in activities that were inconsistent with greater mental limitations, such as

20

cooking, operating a computer, walking around the shopping center, shopping in stores for groceries, managing funds, paying bills, attending baseball games, watching television shows, reading books, bowling, playing tennis, and spending time with others (Tr. 26–28).

Finally, the law judge considered, and gave substantial weight to, the opinions of non-examining reviewing psychologists David Tessler and Jennifer Meyer, who opined that the plaintiff had only mild limitations in the primary areas of mental functioning (Tr. 33; see Tr. 154, 169). Dr. Meyer explained that, "[w]hile significant symptomology is alleged [by the plaintiff], generally only mild mental status issues have been observed at treatment appts" (Tr. 170). Dr. Tessler similarly opined that "some [of the plaintiff's] statements … are disproportionate" to the overall objective evidence (Tr. 154–55). The law judge explained, in giving these opinions substantial weight, that they are "consistent with the bulk of the medical evidence," and that the reviewing psychologists "are experts as well as are familiar with program rules and the expected limitations of impairments" (Tr. 33).

The plaintiff argues the law judge's explanation is inadequate because she "failed to provide any analysis or citations to support her conclusion that Dr. Bedi's opinion was 'inconsistent with the medical

evidence as a whole'" (Doc. 17, p. 18).  This contention is baseless (see supra, pp. 17–21).

As the Commissioner states (Doc. 18, p. 11):

In the paragraphs that preceded the ALJ's weighing of the opinions, the ALJ thoroughly summarized the evidence that both supported her RFC finding and that conflicted with the opinions reached by Drs. Bedi and Scott (Tr. 29-32).  Thus, there can be no doubt of the evidence the ALJ found inconsistent with the doctors' opinions.  It was not necessary for the ALJ to recap, for a second time, all of the evidence she had just discussed in relation to the doctors' opinions.

Moreover, I had no difficulty whatsoever in conducting a meaningful review of this decision, which further buttresses the adequacy of the decision. See Owens v. Heckler, 748 F.2d 1511, 1514–15 (11th Cir. 1984) (The court must have the ability to conduct a review that is both limited and meaningful.).

The plaintiff also argues that the law judge erred in finding that Dr. Bedi's opinion is inconsistent with the evidence (Doc. 17, p. 18).  She contends (id., pp. 18–19):

The doctor's own records showed that Plaintiff had symptoms such as a depressed mood, circumstantial speech, moderate anxiety, palpitations, shaking, fear, and panic attacks ....  Other mental status examinations in the record showed that Plaintiff had a depressed, anxious, or tearful mood.... She also has a history of panic attacks.... All of this evidence supports Dr. Bedi's

22

> finding that Plaintiff's mental health symptoms
> caused marked limitations in her ability to
> complete a regular work schedule....

As stated <u>supra</u>, pp. 14–16, it is not enough for the plaintiff to identify some evidence that supports her claim; the plaintiff has to identify evidence that compelled the law judge to accept Dr. Bedi's opinions. <u>See</u> <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>, 386 F.3d at 1027; <u>MacGregor</u> v. <u>Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986) ("Even if ... the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."). The evidence identified by the plaintiff does not satisfy this requirement.

Furthermore, the law judge found that, despite a depressed or anxious mood, the plaintiff's mental status examinations were otherwise essentially normal and, therefore, the law judge could reasonably conclude that the plaintiff's abnormalities of mood caused no more than mild limitations in mental functioning (<u>see</u> Tr. 26–27, 29–30). The law judge also found that the plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not fully credible, and that determination is supported by substantial evidence (<u>see</u> <u>infra</u>). Therefore, the law judge was not required to accept uncritically the plaintiff's subjective reports of disabling symptoms in determining the weight afforded to Dr.

23

Bedi's opinions. See Majkut v. Commissioner of Social Security, supra, 394

Fed. Appx. at 664.

      The plaintiff also contends that the law judge erred in accepting

the opinions of the reviewing psychologists over those of Dr. Bedi (Doc. 17,

p. 19). She asserts, frivolously, that the law judge "offered no explanation

as to why she found the non-examining opinions to be more persuasive" (id.,

pp. 19–20). However, the law judge explained (Tr. 33):

> The undersigned gives substantial weight to the
> DDS medical opinions, since they are consistent
> with the bulk of the medical evidence, and as they
> are experts as well as are familiar with program
> rules and the expected limitations of impairments.
> These experts had the opportunity to review a
> substantial portion of the medical evidence, and
> evidence received after those opinions were
> rendered reveal the claimant to be on a stable
> steady course, and do not support a finding that the
> claimant's condition is materially worse than it
> was at the time the opinions were rendered.

      The plaintiff argues further that the law judge erred in relying

upon the reviewers' opinions because "[t]he vast majority of Plaintiff's

psychiatric visits occurred after" their evaluations and, consequently,

"[n]either of the[m]... had a complete picture of Plaintiff's mental health

functioning throughout the time period in question" (Doc. 17, p. 19). This

argument fails because the law judge reviewed the entirety of the record and

concluded that the "evidence received after [the reviewers'] opinions ... do not support a finding that the claimant's condition [] materially worse[ned]" (Tr 33). See Cooper v. Commissioner of Social Security, 521 Fed. Appx. 803, 807 (11th Cir. 2013) (No error in relying upon the opinion of the non-examining doctor who was unable to review all of the records, because "the ALJ who made the ultimate determination had access to the entire record."). Thus, the reviewers' opinions were probative of the plaintiff's mental functioning throughout the alleged disability period.

Additionally, the plaintiff notes that "the opinion of a non-examining source is generally accorded less weight than the opinion of a treating psychiatrist" (Doc. 17, p. 19). However, where, as here, the law judge states good cause to discount the opinion of the treating doctor, the law judge may give greater weight to the opinion of a non-examining doctor. See Forsyth v. Commissioner of Social Security, 503 Fed. Appx. 892, 893 (11th Cir. 2013); Wilkinson v. Commissioner of Social Security, 289 Fed. Appx. 384, 386 (11th Cir. 2008). Therefore, the law judge did not err in giving significant weight to the opinions of the non-examining reviewing psychologists.

Additionally, the plaintiff argues that the law judge "did not explain why [her] GAF score was relevant to the analysis of Dr. Bedi's

opinion" (Doc. 17, p. 20).[5]  The plaintiff is referring to the law judge's comment that "it is unclear what the claimant's global assessment functioning is" (Tr. 33).  The comment, which appears to be an afterthought, is immaterial to the law judge's finding because the law judge expressly stated that "[global assessment functioning] scores do not make the claimant's mental health severe" (id.).  See Thornton v. Commissioner, Social Security Administration, 597 Fed. Appx. 604, 613 (11th Cir. 2015) (The Commissioner has concluded that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings."). Furthermore, the law judge expressly limited his reasons for discounting Dr. Bedi's opinions to their "inconsisten[cy] with the medical evidence as a whole and with the opinions of the DDS physicians" (Tr. 33), not GAF scores.

Finally, the plaintiff argues that the law judge "erred by citing concerns about the date of [Dr. Bedi's] opinion as a reason for giving it little weight" (Doc. 17, p. 21).  The law judge correctly stated that the date Dr. Bedi completed the Mental Capacity Assessment form "is not clear" (Tr. 33)

---

[5]The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. GAF scores were omitted from the current version of the Diagnostic and Statistical Manual of Mental Disorders.

because the form is undated.

It appears that Dr. Bedi completed the form in January 2018 (see Tr. 1363). That is nine months after the date the plaintiff was last insured. Furthermore, Dr. Bedi did not indicate that his opinion was retroactive to the insured period.[6] Thus, the law judge's concern about the date Dr. Bedi completed the form is valid because a treating physician's opinion describing a claimant's condition after the date last insured is "not particularly relevant to whether [a claimant] [i]s disabled for purposes of DIB." Hughes v. Commissioner of Social Security Administration, 486 Fed. Appx. 11, 14 (11th Cir. 2012); Anderson v. Schweiker, 651 F.2d 306, 311 n.3 (5th Cir. 1981).

In sum, the plaintiff's challenge to the law judge discounting Dr. Bedi's opinions of the plaintiff's functioning fails. See Adefemi v. Astrue, supra, 386 F.3d at 1027.

---

[6]Notably, Dr. Bedi saw the plaintiff only once during the alleged disability period. Thus, it is arguable whether Dr. Bedi was a "treating physician" for the purpose of opining on the plaintiff's mental functioning during the relevant time period. Cf. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004) (the opinion of a physician who treated the plaintiff on one occasion was not entitled to great weight).

IV.

The plaintiff's final argument is that the law judge "did not provide a sufficient justification for rejecting Plaintiff's testimony" (Doc. 17, p. 21). This argument is meritless.

It is well-established that responsibility for making credibility determinations is reposed in the Commissioner and his determination is entitled to deference. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Pettaway v. Astrue, 376 Fed. Appx. 889, 890 (11th Cir. 2010) ("Credibility determinations about subjective testimony generally are reserved to the ALJ."). Consequently, to overturn the Commissioner's credibility finding, the plaintiff must demonstrate that the evidence compels the contrary finding. See Adefemi v. Ashcroft, supra. The plaintiff's criticisms of the credibility finding do not amount to such a showing.

The law judge summarized the plaintiff's hearing testimony (Tr. 28):

> The claimant testified she [has] a torn hand tendon, a trigger finger with a cyst, migraines, a torn rotator cuff, weakness, CTS, left hand numbness, left shoulder discomfort, anxiety, GERD, past suicidal thoughts, fatigue, sleep disturbance, PTSD with flashbacks, constant panic attacks, and sharp neck/back pains that radiate into her shoulders and back. She stated her pain is exacerbated by activities such as lifting and

28

reaching overhead, which is consistent with the undersigned's finding that the claimant has reaching restrictions and is limited to doing sedentary work. The claimant insisted she is unable to use her left hand. She estimated she has migraines three to four times per week, but noted the migraines only last about one hour, and that she is able to sit twenty minutes, to lift a gallon of liquid, and to stand/walk up to thirty minutes. The claimant reported her medications cause sluggishness and only occasional focus problems. According to the claimant, she has panic attacks three times a week, and flashbacks twice a week, and her panic attacks are precipitated by fear or nervousness. She asserted she does not perform any chores or drive, and that her husband assist[s] her with showering.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge discounts the claimant's testimony concerning subjective complaints, she must articulate explicit and adequate reasons for doing so. Dyer v. Barnhart, supra, 395 F.3d at 1210.

29

The law judge cited to the pertinent regulations and Social Security Rulings (Tr. 28). This demonstrates that she applied the proper standard. See Wilson v. Barnhart, 284 F.3d 1219, 1225–26 (11th Cir. 2002). Furthermore, the law judge concluded, using language in conformity with the Eleventh Circuit standard, that (Tr. 29):

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence ....

Significantly, the law judge credited, to a substantial extent, the plaintiff's allegations of physical limitations, as she greatly restricted the plaintiff to a reduced range of sedentary work (Tr. 27). The law judge only discredited the allegations of total disability.

The law judge explained (Tr. 34):

> [T]he ... residual functional capacity assessment is supported by the claimant's medical records and severe impairments, in addition to the mental opinions of DDS physicians .... The undersigned finds the claimant is limited to doing sedentary work, with certain postural, manipulative, and reaching limitations, in addition to restrictions in exposure to certain environmental conditions, secondary to the effects of the claimant's severe CTS, spinal disorders, OA and migraines. The claimant's medical records reflected the claimant

30

was essentially able to function mentally and physically, even with her impairments. In addition, the claimant's probative test results often indicated only mild, minimal, negative or sometimes moderate findings. The claimant's medical reports also showed the claimant's medical conditions improved with treatment .... Furthermore, the claimant's adult function reports indicated the claimant was basically able to function ....

The law judge's credibility determination is more than adequate to discount the plaintiff's subjective complaints of disabling functional limitations. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006); Grant v. Social Security Administration Commissioner, 710 Fed. Appx. 426 (11th Cir. 2018). As discussed supra, the law judge detailed diagnostic test results and clinical examination findings that are inconsistent with the debilitating limitations asserted by the plaintiff (see Tr. 29–32). See Social Security Ruling 96-7p (S.S.A.), 1996 WL 374186 at *2 ("an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the ... symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record").

31

Furthermore, the law judge found that the plaintiff's activities

of daily living belied her allegations of debilitating functional limitations.

Thus, the law judge discussed that, although the plaintiff testified (Tr. 28):

> she does not perform any chores or drive, and that
> her husband assist[s] her with showering [due to
> her impairments].... in her adult function reports
> dated November of 2015 and February of 2016,
> the claimant noted she was able to cook, operate a
> computer, walk around the shopping center, feed
> herself, shop in stores for groceries, manage funds,
> pay bills, count change, attend baseball games,
> watch television shows, read books, bowl, play
> tennis, spend time with others, get along with other
> people, and get along with authority figures/bosses
> (Exhibits 5E and 14E).

Moreover, the law judge considered that the plaintiff's

treatment was successful in reducing her symptoms (Tr. 30). Specifically,

the law judge recounted plaintiff's reports to her physicians that

"[psychiatric] medications were working well" (id.), the "trigger point

injections had improved her migraine symptoms" (Tr. 32) and she was

"doing very well in physical therapy" (Tr. 30; see also Tr. 937 ("These

medications allow ... [the plaintiff] to increase [her] normal activity level

and decrease[] the limitations placed on her from [her] pain ....")).

The plaintiff argues that the law judge's credibility

determination was deficient because "the decision does not contain 'specific

reasons' for her evaluation of Plaintiff's testimony" and, therefore, the decision is not subject to meaningful judicial review (Doc. 17, p. 23). This contention is baseless (see supra, pp. 31–33).

The plaintiff contends further that "the evidence that the ALJ described in the decision is actually consistent with Plaintiff's testimony about her limitations," citing to findings of tenderness, muscle spasms, trigger points, reduced range of motion in her spine and upper extremities, and grip weakness and decreased sensation (Doc. 17, pp. 23–24). However, the plaintiff does not show these symptoms (which can vary greatly in severity) compelled the law judge to accept the plaintiff's testimony of debilitating limitations, especially considering that the law judge identified treatment records where those symptoms are not even present (see, e.g., Tr. 29 (intact grip strength); Tr. 31 (normal sensations, full ranges of upper extremity motions, no musculoskeletal swelling/tenderness and normal extremity strength). See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (a court may not "re-weigh the evidence or substitute our own judgment" for that of the ALJ, even if the court were to conclude that the evidence preponderates against the ALJ's decision); McCullars v. Commissioner of Social Security Administration, 825 Fed. Appx. 685, 695 n.1 (11th Cir. 2020) ("ALJ[]s are permitted, and in fact, required, to use

judgment in weighing competing evidence and reaching a final determination as to whether an applicant is disabled.").

The plaintiff also argues that "the decision does not address Plaintiff's daily activities" and that she is "[un]ab[le] to perform even simple, brief daily activities without assistance" (Doc. 17, p. 24). This argument is meritless. The law judge repeatedly references the plaintiff's activities of daily living to support her determination that the plaintiff is not disabled (see Tr. 26–27, 34).

Finally, the plaintiff argues that the decision "fails to address Plaintiff's medications and their acknowledged side effects" (Doc. 17, p. 24). This argument is unpersuasive. The law judge acknowledged that the plaintiff took several medications (see Tr. 30, 32, 34). She also recounted the plaintiff's testimony that "her medications cause sluggishness and ... occasional focus problems" (Tr. 28).

The law judge's references to the plaintiff's medications, and her citation to legal authority that she had to consider any side effects in her credibility determination (Tr. 28), are sufficient to show that the law judge considered the alleged side effects and discounted them. See Walker v. Commissioner of Social Security, 404 Fed. Appx. 362, 367 (11th Cir. 2010) (The law judge's finding that the plaintiff's statements concerning the

intensity, persistence and limiting effects of her symptoms were not entirely credible is "a finding that encompassed her testimony about her side effects."); Gantea v. Commissioner of Social Security, 380 Fed. Appx. 950, 951 (11th Cir. 2010) (It is implicit in the credibility determination that the law judge found that the plaintiff's allegations of disabling medication side effects were not credible.); see also Dyer v. Barnhart, supra, 395 F.3d at 1211 ("There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.").

The plaintiff argues, in particular that her mental health medications caused "side effects such as nightmares, increased anxiety, nausea, feelings that she is going crazy and suicidal ideation" (Doc. 17, pp. 24–25). However, as the Commissioner points out, the plaintiff discontinued the medications which caused those symptoms (see Tr. 951, 957, 962). The plaintiff subsequently reported that her medication regimen was "working well" (see, e.g., Tr. 946–47, 960, 962).

Therefore, the plaintiff's criticisms of the credibility decision, which is supported by substantial evidence, clearly do not compel a contrary conclusion. See Adefemi v. Astrue, supra, 386 F.3d at 1027 ("findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal").

35

V.

It is, therefore, upon consideration,

ORDERED:

That the Commissioner's decision is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this ⟨2nd⟩ day of December, 2020.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

36